**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 21, 2012

No. 11-10956

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JAMES CROW,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 6:10-CR-45-C

Before DeMOSS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

A jury convicted Dr. James Crow of two counts of making a false statement concerning a health care matter and fifteen counts of health care fraud. Crow appeals his convictions on grounds of vagueness in the criminal statutes and insufficiency of the evidence. We AFFIRM.

Crow is a licensed dentist who has practiced in Texas since 1973. In 2003, when his partner retired, Crow took sole ownership of the dental practice. By then, the practice was largely comprised of Medicaid patients. The Medicaid

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10956

program relies on two separate provider manuals: the Medicaid Provider Manual which sets forth the terms of enrollment, including a section devoted to fraud and abuse, and the Current Dental Terminology handbook ("CDT") which identifies billing codes for various dental procedures and is used by dentists nationwide when billing third-party payers (i.e. private insurance carriers and Medicaid).  A single billing code incorporates information on the type of procedure performed, the number of sides of a tooth, the number of teeth, and the depth of drilling involved in that procedure.

The Government indicted Crow for fraudulent billing "for services never rendered and for services rendered using inappropriate billing codes." Specifically alleged was that Crow billed sealant or "preventive resin restoration" ("PRR") procedures as fillings, which provided a higher rate of reimbursement.  After an eight-day trial, a jury convicted Crow of two of the four charged counts of making a false statement concerning a health care matter and fifteen of sixteen counts of health care fraud, in violation of 18 U.S.C. § 1035(a)(2) and 18 U.S.C. § 1347 respectively.  Crow timely appealed.

DISCUSSION

*I.    Vagueness*

In a pretrial motion to dismiss the indictment and later in a motion at trial for a judgment of acquittal, Crow presented his argument that the charges against him were based on an overly vague statute.  The motions preserved the issue, and we review it *de novo.  United States v. Ollison*, 555 F.3d 152, 160 (5th Cir. 2009).

The allegation of ambiguity or vagueness focuses on four billing codes that are relevant in this prosecution.  D-1351 is the code for a "sealant," which is a "preventative" coating placed on the surface or enamel layer of a tooth.  Billing codes D-2391, D-2392, and D-2393 refer to "restorative" work including fillings. Those are appropriate when a cavity penetrates the deeper, dentin layer of one,

2

two, or three sides of a tooth respectively. In 2004, the first year covered by the indictment, Medicaid reimbursed a maximum of $24.38 for any number of sealants placed during a single patient visit and $67.45 for each tooth on which a three-surface filling was placed.

Crow asserts that 18 U.S.C. § 1035(a)(2) and 18 U.S.C. § 1347 fail to provide fair warning of criminal conduct because the statutes can be violated by misuse of ambiguous billing codes from the CDT handbook. The false statement statute provides for criminal liability when, "in any matter involving a health care benefit program, [a defendant] knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statements or representations." 18 U.S.C. § 1035(a)(2). The health care fraud statute is violated when a defendant "knowingly and willfully executes, or attempts to execute, a scheme or artifice . . . to defraud any health care benefit program." 18 U.S.C. § 1347(a)(1).

One factor that courts have considered in evaluating statutes for potential vagueness is the *mens rea* requirement. *Colautti v. Franklin*, 439 U.S. 379, 395 (1979). The requirement that a defendant act willfully or purposefully largely vitiates the objection that a statute criminalizes conduct a defendant did not know was wrongful. *Id.* at 395 n.13 (citation omitted).

Both statutes under which Crow was convicted, Section 1035(a)(2) and Section 1347, require that a defendant act "knowingly and willfully." This intent was also specified in the indictment. Jurors were properly instructed on the meaning of "knowingly and willfully." The judge further instructed, "That a defendant may have violated certain Medicaid policies does not necessarily mean that the defendant is guilty of the crimes charged in the indictment." Jurors necessarily found that Crow acted with knowledge that his actions were unlawful. By the language of the statutes, mere mistake or negligence with respect to selecting Medicaid billing codes could not give rise to liability. Based on these instructions, negligence would not have justified a verdict of guilt.

3

We conclude that as applied to Crow, the statutes at issue present fair warning of the conduct that is proscribed.

## II.     *Sufficiency of the Evidence*

When, as here, a defendant preserves a challenge to the sufficiency of evidence, this court reviews the denial of a motion for a judgment of acquittal *de novo*. *United States v. Curtis*, 635 F.3d 704, 717 (5th Cir. 2011), *cert denied*, 132 S. Ct. 191 (2011). We review evidence in the light most favorable to the jury verdict and will affirm if a rational jury could have found guilt beyond a reasonable doubt. *United States v. Mudd*, 685 F.3d 473, 477 (5th Cir. 2012). Crow specifically asserts there was insufficient evidence to find he possessed the requisite intent to violate the relevant statutes.

The evidence included proof that from 2004 to 2007, Crow submitted 51,614 claims for fillings alone and no claims for sealants. This averaged to 64 fillings per day and 15.6 fillings per client over the four-year period, including a day on which 199 fillings were billed. On 1,290 occasions, Crow billed for 16 fillings on individual patients in one day, as compared with 96 times he billed one filling and 34 times he billed two fillings. Crow billed three sets of fillings in a single patient's teeth three times and two sets of fillings 34 times. In each of the years from 2004 to 2007, for the three-surface restoration code (D-2393), which allowed the highest reimbursement, Crow was Medicaid's highest biller, submitting at least twice as many claims as the next highest billing dentist. Crow did not dispute the foregoing evidence.

Upon enrolling as a Medicaid provider, Crow signed an agreement to become familiar with the contents of the Medicaid Provider Manual and comply with its requirements, including a section on fraud and abuse that mentions the possibility of criminal prosecution. The Manual also clarifies that a provider is responsible for all billings from his office, including by employees and agents.

No. 11-10956

Crow was aware of the requirement to, and indeed on some occasions did, consult the CDT to identify the appropriate code with which to bill Medicaid.

The Government presented extensive circumstantial evidence that Crow did not perform the procedures for which he billed. For example, one expert testified it would take 15-16 minutes to perform a three-surface filling, though additional fillings would take considerably less time. Given the high number of fillings for which Crow billed Medicaid, including up to 199 fillings in one day, this evidence casts significant doubt on Crow's physical capacity to perform all the work he billed. Further, Crow consistently billed high numbers of fillings for single patients (i.e., 15 or 16) and frequently found a need to replace many of those fillings within a time period testimony suggested was far sooner than the typical lifespan for fillings.

Also presented was direct evidence of instances in which Crow submitted claims to Medicaid but had not drilled deeply enough or on enough tooth sides to justify the billing code he used. In other cases, Crow performed no work at all. An expert witness for the Government reviewed post-treatment x-rays and performed clinical examinations of Crow's patients, including those patients named in the indictment, and testified to work wholly unperformed and work only partially performed (e.g., where Crow billed for a three-surface procedure but worked on only one surface). Further, almost all of the patients listed in the indictment testified they did not remember receiving, and were not told about, the number of fillings for which Crow billed, including second and third re-fillings of the same teeth. Of the five parents of patients who testified, all testified they were not told their children would be receiving fillings.

Crow's primary defense is that he was performing PRRs, a procedure in between sealants and fillings, for which the proper billing code was ambiguous. The Government presented the testimony of the State Dental Director that between 2004 and 2007, PRRs should have been billed as sealants, rather than

5

the more expensive fillings, and Crow admitted he was not even familiar with the term PRR prior to his indictment in this case. Crow's defense is also flawed at a more fundamental level. The Government presented evidence, and Crow acknowledged, that a PRR is a "pinpoint" procedure, or in other words there is no such thing as a two-surface or three-surface PRR. Fourteen of the seventeen counts on which Crow was convicted dealt with billing two- and three-surface procedures. Thus, even if the jury entirely credited Crow's defense of honest confusion over the billing of the PRR procedure, which the evidence permitted but by no means required, the jury still could have convicted Crow on the fourteen counts covering two- and three-surface procedures.

The Government presented sufficient evidence for a rational jury to find that Crow acted knowingly and willfully on all counts of conviction.

AFFIRMED.